IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GILBANE BUILDING COMPANY a/k/a GILBANE BUILDING COMPANY, INC.<br><br>                Plaintiff,<br><br>v.<br><br>SWISS RE CORPORATE SOLUTIONS ELITE INSURANCE CORPORATION d/b/a NORTH AMERICAN ELITE INSURANCE COMPANY; and EVEREST NATIONAL INSURANCE COMPANY<br><br>                Defendants. | Case No. 4:22-cv-02369 |

**PLAINTIFF GILBANE BUILDING COMPANY A/K/A GILBANE BUILDING COMPANY, INC.'S SECOND AMENDED COMPLAINT**

**THE PARTIES**

1.      Plaintiff GILBANE BUILDING COMPANY a/k/a GILBANE BUILDING COMPANY, INC. ("Gilbane") is a corporation formed under the laws of the State of Rhode Island, with its principal place of business at 7 Jackson Walkway, Providence, RI 02903.

2.      Upon information and belief, Defendant SWISS RE CORPORATE SOLUTIONS ELITE INSURANCE CORPORATION d/b/a NORTH AMERICAN ELITE INSURANCE COMPANY ("North American") is a corporation formed under the laws of the State of New Hampshire, with its principal place of business at 650 Elm Street, Manchester, NH 03101.

3.      Upon information and belief, Defendant EVEREST NATIONAL INSURANCE COMPANY ("Everest") is a corporation formed under the laws of the State of Delaware, with its principal place of business at Westgate Corporate Center, 477 Martinsville Road, Liberty Corner,

NJ 07938. North American and Everest may hereinafter be referred to collectively as the "Insurers."

## JURISDICTION AND VENUE

4. This Court has jurisdiction over North American and Everest because, among other reasons, North American and Everest are insurance companies licensed to do business in the State of Texas and do so conduct business in Texas.

5. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

6. This is an action between citizens of different states, and diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332.

7. Venue is proper pursuant to 28 U.S.C. § 1391 because all or a substantial portion of the events giving rise to this suit occurred in this judicial district; specifically, the construction project insured by North American and Everest is located in Houston, Texas.

8. This is a case or controversy involving an insurance policy issued in this judicial district sufficient to permit a declaratory judgment action pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201.

## FACTUAL BACKGROUND

### *The Block 58 Project and the Builder's Risk Insurance Policies*

9. On July 13, 2018, Gilbane entered a contract with Block 58 LLC ("Block 58") to construct a 48-story office building in downtown Houston, Texas (the "Project").

10. Pursuant to its contract with Block 58, on or around July 17, 2018, Gilbane purchased a builder's risk insurance policy from Defendants North American and Everest, bearing

policy numbers EGP10003700 and IM8CM00421 (the "Policy"). The Policy is attached hereto as Exhibit A.

11. The Policy includes a Participation Page that indicates that North American and Everest "do severally, but not jointly, agree to indemnify the insured for the amount recoverable in accordance with the terms and conditions of the attached Policy."

12. Pursuant to the Participation Page, North American and Everest share liability under the terms of the Policy equally.

13. The effective policy period for the Policy is July 17, 2018 through October 31, 2021.

14. The Policy includes a combined single limit of $348,062,000.00 for any one occurrence, subject to the applicable deductible shown in the Policy's Declarations.

15. The Policy provides:

> [T]he applicable amount shown as a deductible in the Declarations shall be deducted for each claim arising from insured loss or damage in any one OCCURRENCE*. The Company shall be liable only for its portion of the amount of insured loss or damage in excess thereof, subject to all terms and conditions of this Policy.

16. The Policy's Declarations state that a $50,000 deductible will apply for a loss arising from a WINDSTORM. However, when the loss is due to a NAMED STORM as defined by the Policy, a 2% VARTOL deductible will apply. The Policy defines VARTOL as "[t]he value of the property insured at risk at the time of direct physical loss or damage to the INSURED PROJECT."

17. The Policy defines WINDSTORM as:

> An atmospheric disturbance accompanied by wind, including any substance driven by wind, rain, hail, sleet, thunderstorm, tornado or any combination of the foregoing but excluding any storm surge, resulting

FLOOD*, tidal, or wave action except as respects any WINDSTORM* which is a NAMED STORM.

18. The Policy defines NAMED STORM as:

A WINDSTORM* that has been declared by the National Oceanic and Atmospheric Administration's (NOAA) National Hurricane Center, National Weather Service or similar governing body to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or a Tropical Depression and includes storm surge being defined as an offshore rise of water associated with a low pressure weather system, typically a tropical cyclone and including any resultant FLOOD*, tidal or wave action.

19. Gilbane is the Named Insured under the Policy.

20. At all relevant times, the Policy was in full force and effect.

21. Work on the Project began on or about July 17, 2018.

### *Weather Event*

22. On September 22, 2020, heavy rain in the Houston area caused a large amount of water to enter the garage elevators (the "Weather Event").

23. The rain was associated with a Tropical Depression, which had made landfall the previous evening over Matagorda Bay, Texas, approximately 100 miles from the downtown Houston Project, as a Tropical Storm at 9:45 PM Central Standard Time on September 21, 2020.

24. However, by 10:00 AM on September 22, 2020, when the effects of Tropical Storm Beta reached downtown Houston, the storm had weakened and was downgraded by the National Hurricane Center to a Tropical Depression.

25. Also by 10:00 AM on September 22, 2020, the National Hurricane Center discontinued the coastal Storm Surge Warning associated with the Tropical Depression.

26. At no time on September 22, 2020 was the Project ever under the National Hurricane Center's Storm Surge Warning.

27. At no time on September 22, 2020 was the Project ever under threat of storm surge.

4

28. At no time during the Weather Event did the Project suffer any damage from storm surge.

29. At 10:25 AM, water was first observed dripping on the plastic protection over the bus duct on Level 11 of the Project and, shortly thereafter, was visible on the electrical bus riser insulation.

30. By 12:35 PM, water was entering the garage elevator cars of the Project.

31. As a result of this water infiltration due to the heavy rain, Gilbane's subcontractors had to repair damaged sheetrock and insulation, undertake repairs to the damaged elevators, and repair and replace damaged electrical equipment, including sections of the electrical bus duct.

32. The total cost of the Project's damage is estimated at approximately $906,220.

### *Engle Martin's Investigation and Adjustment of the Claim*

33. Gilbane submitted notice of a claim against the Policy related to the damage caused by the Weather Event to Engle Martin & Associates ("Engle Martin") on or about September 28, 2020 (the "Claim"). Gilbane's notice is attached hereto as Exhibit B.

34. Engle Martin is North American's and Everest's agent, assigned to investigate and adjust the Claim.

35. Gilbane provided responses to Engle Martin's requests for information concerning costs and estimates of the loss and accommodated Engle Martin's site visits.

36. On July 19, 2021, Gilbane provided, through its claim's preparer, Joseph Stella, an updated cost summary that included supporting invoices, photographs, and spreadsheets that outlined and substantiated Gilbane's costs related to the Claim.

37. Although Mr. Stella asked Engle Martin to expedite payment for the Claim, Engle Martin did not respond to Gilbane's demand for payment until September 14, 2021, when Engle Martin's Cristian Morales e-mailed Mr. Stella and indicated that he would be reviewing the documentation that Gilbane submitted.

38. As of December 10, 2021, neither Engle Martin nor the Insurers had responded to Gilbane's demand for payment or provided a coverage determination.

39. On December 10, 2021, Gilbane, through its Assistant General Counsel, sent an e-mail to Engle Martin demanding that the Insurers either make a determination of coverage or pay the Claim by December 20, 2021.

40. Anthony DeCesares of Engle Martin responded to Gilbane's December 10, 2021 on December 13, 2021 and promised to "have the file final-reviewed and reported to Underwriters."

41. By December 23, 2021, neither Engle Martin nor the Insurers had responded concerning either payment to Gilbane or the Insurers' coverage position, leading Gilbane again to request an update.

42. On December 28, 2021, Engle Martin e-mailed Donald Naber at Gilbane and indicated for the first time that the NAMED STORM deductible – that is, the 2% VARTOL deductible – applied to Gilbane's loss.

43. At no time prior to December 28, 2021 had Engle Martin asserted that the NAMED STORM deductible would apply to Gilbane's loss resulting from the Weather Event.

44. Because the Policy's definition of NAMED STORM requires the presence of storm surge, and there was no storm surge at the inception of or during the damage that is the subject of Gilbane's claim, the NAMED STORM deductible does not apply.

45. Notwithstanding the plain language in its Policy, North American and Everest have steadfastly refused to pay for Gilbane's losses and have maintained their position that they have no coverage obligations because the NAMED STORM deductible applies to Gilbane's loss.

## COUNT ONE: BREACH OF CONTRACT – GILBANE AGAINST NORTH AMERICAN AND EVEREST

46. The allegations in paragraphs 1 through 45 are hereby repeated and realleged as if set forth fully herein.

47. The Policy is a valid and enforceable written contract effective July 17, 2018 through October 31, 2021.

48. Gilbane provided timely notice of the claims to North American and Everest.

49. Gilbane complied with all necessary conditions and other terms of the Policy or is otherwise excused from the performance of those conditions and terms.

50. Pursuant to the terms of the Policy, North American and Everest are required to provide coverage to Gilbane for the repair and replacement of the damaged drywall, bus ducts, and associated electrical equipment that resulted from the Weather Event, subject to a $50,000 deductible due to a loss resulting from a WINDSTORM.

51. North American and Everest's failure and/or refusal to apply the applicable WINDSTORM deductible to the covered property damage is a breach of the express terms of the Policy.

52. As a result of North American and Everest's breach, Gilbane has suffered, and continues to suffer, damages.

## COUNT TWO: ATTORNEY'S FEES – GILBANE AGAINST NORTH AMERICAN AND EVEREST

53. The allegations in paragraphs 1 through 52 are hereby repeated and realleged as if set forth fully herein.

54. In accordance with Tex. Civ. Prac. & Rem. Code § 38.002, Gilbane presented its claim to North American and Everest on July 19, 2021.

55. It has been more than thirty days since North American and Everest were presented with Gilbane's claim, and they have failed and/or refused to tender the amount demanded.

56. Pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, Gilbane respectfully requests this Court issue an award of attorney's fees.

## COUNT THREE: DECLARATORY JUDGMENT – GILBANE AGAINST NORTH AMERICAN AND EVEREST

57. The allegations in paragraph 1 through 45 are hereby repeated and realleged as if set forth fully herein.

58. Pursuant to Tex. Civ. Prac. & Rem. §37.003, Gilbane requests that this Court declare that Gilbane's losses resulting from the Weather Event are subject solely to the $50,000 WINDSTORM deductible. Specifically, Gilbane requests a declaration that:

   a. Gilbane's loss is only subject to the WINDSTORM deductible.

   b. The NAMED STORM deductible can only be applied if the Insurers can establish (1) the WINDSTORM was designated a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or a Tropical Depression by one of NOAA's governing bodies, *and* (2) the WINDSTORM included storm surge.

   c. Gilbane's loss occurred after the National Weather Service downgraded Tropical Storm from a Tropical Storm to a Tropical Depression and discontinued the storm surge warning.

    d.   Gilbane's loss was not due to a NAMED STORM, as defined by the Policy.

    e.   Gilbane's loss is not subject to the NAMED STORM, a 2% VARTOL deductible.

59.    Pursuant to Tex. Civ. Prac. & Rem. §37.009, Gilbane respectfully requests this Court issue an award of costs and attorney's fees.

### COUNT FOUR: VIOLATION OF CHAPTER 541 OF TEXAS INSURANCE CODE – GILBANE AGAINST NORTH AMERICAN AND EVEREST

60.    The allegations in paragraphs 1 through 45 are hereby repeated and realleged as if set forth fully herein.

61.    Pursuant to Tex. Ins. Code § 541.151, Gilbane has sustained actual damages caused by North American and Everest's engaging in acts and practices that constitute unfair and deceptive acts or practices in the business of insurance, as set forth in Subchapter B of Chapter 541 of the Texas Insurance Code. Specifically, North American and Everest's violations include, but are not limited to –

    a.   a violation of Tex. Ins. Code § 541.060(a)(1), which provides that "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue" is an unfair or deceptive act or practice.

    b.   a violation of Tex. Ins. Code § 541.060(a)(2)(A), which provides that "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear . . ." is an unfair or deceptive act or practice.

62.    Here, Gilbane provided comprehensive coverage correspondence to North American and Everest setting forth the law and facts that establish that Gilbane is entitled to coverage under the North American and Everest Policies and that Gilbane's claim is not subject to

the VARTOL deductible; yet North American and Everest failed to offer a fair and prompt payment of Gilbane's claims and waited one year and three months before ever proclaiming that the VARTOL deductible would apply. Instead, North American and Everest, having knowledge that the Policy provides coverage to Gilbane and was not subject to the VARTOL deductible, still refused to pay Gilbane's claim.

63. Pursuant to Tex. Ins. Code § 541.152(a), Gilbane seeks actual damages caused by North American and Everest's violations, in addition to court costs and reasonable and necessary attorney's fees, and any other relief that this Court determines is proper.

64. Gilbane's "actual damages" include, but are not limited to, all direct, consequential, and special damages, including but not limited to, the benefits under the North American and Everest Policies that Gilbane is entitled to and the increased costs incurred by Gilbane due to North American and Everest's bad acts.

65. Because North American and Everest knowingly committed the acts as set forth above, Gilbane seeks an award for three times the amount of its actual damages pursuant to Tex. Ins. Code § 541.152(c).

**COUNT FIVE: VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT – GILBANE AGAINST NORTH AMERICAN AND EVEREST**

66. The allegations in paragraphs 1 through 45 are hereby repeated and realleged as if set forth fully herein.

67. Gilbane qualifies as a "consumer" under Tex. Bus. & Com. Code § 17.45.

68. Pursuant to Tex. Bus. & Com. Code § 17.50(a)(2) &(4), North American and Everest's violations of Chapter 541 of the Texas Insurance Code, as set forth in more detail in paragraphs 33 through 46, exacerbated Gilbane's economic damages.

69. Pursuant to Tex. Bus. & Com. Code § 17.50(b)(1), Gilbane seeks economic damages as determined by the trier of fact, along with an award of three times the amount of economic damages for North American and Everest's knowing violations of Chapter 541 of the Texas Insurance Code.

70. Gilbane's economic damages include, but are not limited to, all direct costs for the repair to damaged elevators and repair and replacement of damaged sheetrock, insulation, and damaged electrical equipment, including sections of the electrical bus duct, and special damages including but not limited to the increased cost incurred by Gilbane due to North American and Everest's bad acts in delaying payment for and ultimately denying the claim.

71. Pursuant to Tex. Bus. & Com. Code § 17.50(d), Gilbane seeks court costs and reasonable and necessary attorney's fees.

## **COUNT SIX: COMMON LAW BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING – GILBANE AGAINST NORTH AMERICAN AND EVEREST**

72. The allegations in paragraphs 1 through 45 are hereby repeated and realleged as if set forth fully herein.

73. Pursuant to Texas Law, North American and Everest have a duty to act in good faith and to deal fairly with Gilbane in the processing of their insurance claims.

74. North American and Everest breached the duty when they unreasonably waited one year and three months to proclaim that the VARTOL deductible would apply to Gilbane's claim.

75. North American and Everest breached that duty when they unreasonably sought to apply the VARTOL deductible to Gilbane's claim for damage caused by the Weather Event contrary to the plain language of the Policies and the precepts of Texas law.

### COUNT SEVEN: VIOLATION OF THE TEXAS PROMPT PAYMENT OF CLAIMS ACT – GILBANE AGAINST NORTH AMERICAN & EVEREST

76. The allegations in paragraphs 1 through 45 are hereby repeated and realleged as if set forth fully herein.

77. The Texas Prompt Payment of Claims Act requires insurers to pay claims within 60 days of receiving all items, statements, and forms reasonably requested and required under Tex. Ins. Code § 542.055.

78. North American and Everest have failed to pay Gilbane's damages covered under the North American and Everest Policies in violation of Tex. Ins. Code § 541.058.

79. Pursuant to Tex. Ins. Code § 542.060, Gilbane seeks the amount of the claim, plus interest on the amount of the claim at the rate of 18 percent a year, as damages, together with reasonable and necessary attorney's fees.

### JURY DEMAND

80. Gilbane hereby demands a jury trial.

### PRAYER FOR RELIEF

81. WHEREFORE, Gilbane respectfully prays that this Court enter judgment in favor of Gilbane and against North American and Everest as follows:

   a. Damages resulting from North American and Everest's breach of the North American and Everest Policies, along with attorney's fees and costs;

   b. A declaration that the North American and Everest Policies provide coverage for Gilbane's loss as set forth in all the paragraphs herein, along with attorney's fees and costs;

c. Actual damages, costs, and attorney's fees and an award of treble damages pursuant to Tex. Ins. Code §541.152;

d. 18% annual interest pursuant to the Texas Prompt Payment of Claims Act;

e. Exemplary damages as determined by the trier of fact;

f. Pre-judgment and post-judgement interest as permitted by law;

g. All costs of Court; and

h. Such other relief, at law or in equity, to which Gilbane is justly entitled.

Dated: February 1, 2023                                             Respectfully submitted,


By: _/s/ Tracy A. Saxe_
Tracy A. Saxe
Texas Bar No. 24049828
Brian J. Clifford (phv *admission*)
bclifford@sdvlaw.com
Janie R. Eddy (*phv admission*)
jeddy@sdvlaw.com
Saxe Doernberger & Vita, PC
35 Nutmeg Drive
Trumbull, CT 06611
(203) 287-2100
(203) 287- 8847

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

      The foregoing was electronically served upon counsel in accordance with the FEDERAL RULES OF CIVIL PROCEDURE on February 1, 2023.

Kristin C. Cummings  
David B. Winter  
ZELLE LLP  
901 Main Street, Suite 4000  
Dallas, Texas 75202-3975  
(214) 742-3000  
*Attorneys for Defendants*

                                           */s/ Tracy A. Saxe*  
                                               Tracy A. Saxe